Filed 3/3/16  In re S.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re S. S., a Person Coming Under the Juvenile Court Law. | C080411 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JANIE S. ,<br><br>        Defendant and Appellant. | (Super. Ct. No. J06774) |

Janie S., mother of the minor, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  Mother argues the court erred in terminating her parental rights because she established both the

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

1

beneficial parental relationship exception and the sibling relation exception to the preference for adoption. Mother also questions whether minor's counsel had an actual conflict in representing both minors because the permanent plan for S. S. and the permanent plan for her half sibling differed. We affirm.

FACTS

In May 2014, the San Joaquin Human Services Agency (Agency) filed a petition to detain the infant, S. S., because mother and S. S. tested positive for methamphetamine at the minor's birth and the minor was premature and showed signs of drug withdrawal.[2] Mother had used multiple drugs, including methamphetamine, during pregnancy. Mother completed drug rehabilitation in 2002 but relapsed and currently had no suitable housing for the minor. The juvenile court ordered the minor detained.

In August 2014, the court sustained the petition. The court increased the frequency of mother's visitation with S. S. and set a disposition hearing.

The disposition report filed in August 2014 stated that the minor was originally placed in a foster home then moved to the same placement as her half sibling, M. S. Mother refused residential drug treatment and was not participating in any services. Mother visited the minors three times a week, once at the visit center and two other visits that were facilitated by the maternal grandmother. At the disposition hearing, the juvenile court adopted the Agency's recommendations for reunification services and ordered mother to drug court.

The Agency's six-month review report in February 2015 confirmed that M. S. was placed with the maternal uncle in December 2014 after the death of her grandmother while S. S. remained in foster care. The minors visited each other during mother's three-weekly supervised visits. Mother was terminated from drug court and parenting class but

---

[2] The eight-year-old half sibling, M. S., was also detained but orders relating to her were not appealed.

was participating in therapy. The Agency recommended termination of services for failure to comply with the service plan.

At the review hearing in April 2015, the juvenile court adopted the Agency's recommended findings and orders terminating mother's services and set a section 366.26 hearing to select a permanent plan.

A review report in July 2015 stated that M. S., now 10 years old, had adjusted to placement in her uncle's home but preferred to move to a maternal aunt's home since the uncle was moving out of state. M. S. wanted to go home and did not want to be adopted by anyone but did not oppose relative placement under guardianship or long-term foster care. M. S. was in counseling for emotional issues. S. S. continued to do well in her foster placement, had no health, developmental or emotional issues and the foster parents were interested in adopting her. Mother visited the minors weekly at the visit center for two hours and the minors saw each other at these visits. Mother also was entitled to weekend visits supervised by the maternal aunt. Mother did not request these visits but did attend when they were arranged.

In the assessment for the section 366.26 hearing, the Agency recommended termination of parental rights only as to S. S. The assessment reiterated the visitation information in the contemporaneous review report and noted that M. S. demonstrated a strong attachment to the mother. The Agency concluded S. S. was generally adoptable and that M. S. was not adoptable due to her expressed preferences. The Agency recommended continued visitation between mother and M. S. but not between mother and S. S. until an adoption was finalized. The Agency's opinion was that termination of parental rights would not be detrimental to S. S. because the minor had never been in the mother's care and lacked a parental bond with mother.

Mother testified at the section 366.26 hearing in August 2015. She testified that she visited the minors three times a week for a total of six hours with one visit at the visit center and the other two in the community monitored by her sister. She described visits

as interactive and loving with reading, playing, and snacks. Mother testified S. S. called her mommy and happily played with M. S. Mother believed it would be beneficial to S. S. to continue a relationship with her because S. S. enjoyed it and it was now a habit for S. S. to visit both M. S. and mother.

The court, in analyzing the evidence, commented that it appeared S. S. was a friendly gregarious child but that the contact between mother and child was more like that of a friendly visitor because visits had always been supervised and there was little or no evidence of actual parenting during visits. The court further observed there also was little evidence regarding the sibling exception. The court found neither exception had been established and terminated parental rights with a permanent plan of adoption. The court continued M. S.'s case for consideration of a permanent plan of guardianship.

DISCUSSION

I

*Parent-Child And Sibling Relationship Exceptions*

Mother contends the juvenile court should not have terminated her parental rights because both the parent-child beneficial relationship and the sibling relationship exceptions applied.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)

The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights. (*In re*

4

*Cristella C.* (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.) The primary exceptions, i.e., benefit from continued contact with the parent and interference with a sibling relationship, each requires the party to establish a factual predicate and the court to weigh the evidence.

A

*Parent-Child Beneficial Relationship Exception*

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

The evidence does not support the existence of this exception. Both the Agency's reports and mother's testimony establish that she had regular weekly supervised visitation at the visit center and some additional visitation on weekends. However, mother had never had the minor in her custody or attended to her care as a parent. S. S. knew mother only as an habitual visitor, not a caretaker. Visits were apparently pleasant interactions for mother and the two minors but there was little to indicate that the very young minor

5

viewed mother as anything but a friendly visitor. There was no evidence of a significant positive emotional attachment between S. S. and mother that would outweigh the benefits to S. S. of the permanence and stability which an adoption would offer. The juvenile court properly found mother had not established this exception.

B

*Sibling Relationship Exception*

A second circumstance under which termination of parental rights would be detrimental is when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

The court must consider the interests of the adoptive child, not the siblings, in determining whether termination would be detrimental to the adoptive child. (*In re Celine R*. (2003) 31 Cal.4th 45, 49-50.) "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952, fn. omitted.)

Viewed from S. S.'s perspective, eight-year-old M. S. had lived with her infant sister for only six months before moving to the maternal uncle's home. The two had few, if any, meaningful shared experiences during that time in part due to the difference in ages and in part due to the short time they shared a home. M. S. had an important

6

connection to her maternal family while S. S. had none.  The relationship between the two half siblings was developed only during weekly visits where each interacted with the other and with mother.  There was no evidence that severing this tenuous, if pleasant, relationship would be in the least harmful to S. S.  The court properly concluded mother had not established this exception to termination.

Because the evidence did not support either claimed exception, the juvenile court did not err in terminating parental rights as to S. S. and selecting a permanent plan of adoption.

II

*Counsel For Minors*

Mother also questions whether the court should have appointed separate counsel for the two minors since M. S. did not want to be adopted and her permanent plan was likely to be guardianship whereas the permanent plan for S. S. was termination of parental rights and adoption.

Even assuming mother has standing to raise the issue of conflict free counsel for the minors and has not forfeited the issue by failing to object in the trial court, she cannot prevail.  (*In re Noreen G*. (2010) 181 Cal.App.4th 1359, 1377-1378; *In re Dakota S*. (2000) 85 Cal.App.4th 494, 502; *In re S.B*. (2004) 32 Cal.4th 1287, 1293.)

The question of when to appoint conflict counsel for minors was addressed by the Supreme Court in *In re Celine R*.  The court held "that the court may appoint a single attorney to represent all of the siblings unless, at the time of appointment, an actual conflict of interest exists among them or it appears from the circumstances specific to the case that it is reasonably likely an actual conflict will arise.  After the initial appointment, the court must relieve counsel from the joint representation when, but only when, an actual conflict of interest arises."  (*In re Celine R.*, *supra*, 31 Cal.4th at p. 50.)  Further, "error in not appointing separate counsel for a child or relieving conflicted counsel"

requires reversal only if it is reasonably probable the outcome would have been different but for the error. (*Ibid.* at pp. 59-60.)

For an actual conflict to arise at the permanency planning stage there must be a showing that the siblings have different interests that would require their attorney to advocate a course of action for one child which has adverse consequences to the other. Standing alone, the fact that siblings have different permanent plans does not necessarily demonstrate an actual conflict of interest. (Cal. Rules of Court, rule 5.660 (c)(1)(C)(v); *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1268.)

The permanent plans for S. S. and M. S. differed. However, the minors were not closely bonded and there was no evidence that either would be adversely affected by the permanent plan of the other. Under the circumstances, no actual conflict existed and separate counsel was not required.

DISPOSITION

The orders of the juvenile court are affirmed.


                                                    /s/
                                                    Robie, Acting P. J.



We concur:



/s/
Murray, J.



/s/
Duarte, J.



8